This is Brunton v. Kruger. For the appellate, Mr. Chambers. And for the appellee, Mr. Turner and Mr. Deese, you've split your time. All right, you may proceed. Good afternoon, Your Honors. May it please the Court, Counsel, Robert Chambers from Pretzel & Stauffer in Chicago, on behalf of the contemnor, Matthew Tibble, who is sitting with me at counsel table. This is an appeal from the 11th Judicial Circuit from a contempt line, civil contempt. Voluntary, non-contemptuous contempt. And I think the one thing that the parties all agree upon, and probably the only thing they agree upon, is that what Mr. Tibble did was reasonable and appropriate under the circumstances. And that, at minimum, I'd ask this Court to vacate the civil contempt line and finding against him, because it was appropriate to obtain review from this Court of an otherwise interlocutory discovery order. That having been said, we'd ask for that review, no matter what the Court does with respect to the privileges. This case concerns the accountant-client privilege. The trial court found two exceptions to a statute which otherwise, frankly, has no exceptions, and the defendant, the appellees, could point to no other exception. She found that the documents in question that were maintained by the accounting firm had to be produced to the petitioner, June Brunton, because of waiver and a testamentary exception to the statute. With respect to waiver, we would submit to the Court that, whereas here, an accounting firm acquires documents and confidential information from its clients for the purpose of an estate plan and performs the estate plan for the people, here are the Krugers, Helen and Gordon Kruger. They act as the agent of the client. The information was unmistakably acquired in a confidential relationship and intended to be maintained as confidential. That having been said, when they gave the documents, pursuant to a subpoena, and it could have been pursuant to a request for that matter, to the attorneys or the executors, the executors, who were acting on behalf of the decedents, Helen and Gordon Kruger, were standing in the shoes of the former clients. That having been said, when those documents, still clothed with privilege, were given to the executors' attorneys, they remained privileged because Illinois recognizes among professionals a common interest doctrine. Now, the Appellees say, we don't know what Brunton says about that because it's kind of confusing, but the Krugers say that that doctrine is unavailing because it arose in the context of an attorney-client relationship. Well, that's not exactly true. The Illinois Supreme Court recognized the common interest doctrine in 1991 in the waste management case. I represented the insurers in that case, and we argued that the attorney for the insured, waste management, had to turn over his client's file. He had to turn over his file because, as between the insurance company and the attorney hired by the insured, there was no privilege. There was a common interest. The common interest was to defeat the claimant's claim. The Supreme Court agreed, and the Supreme Court recognized that a common interest exists where one professional has documents that are privileged, and they are given to another professional in the context of a common interest or common relationship. The privilege remains because of that mutuality, if you will. That doctrine was further recognized in an attorney-client relationship by the First District just last year in Adler v. Greenfield. In that case, an attorney for Leonard and Muriel Perry, who was doing estate planning work, Frank Greenfield, gave information and documents he acquired from his clients to their banker and financial advisor at J.P. Morgan Bank. The court held there was a common interest. There was a mutuality. Therefore, the privilege, which belonged to the Perrys, was not waived by their lawyer when the lawyer gave the documents, otherwise privileged as to all the world, to the client's banker. It's the same situation here. The accountants provide documentation to the attorneys for their deceased client's executors. The executors stand in the shoes of the deceased client. The privilege has not been lost. The trial court, we submit, erroneously held that it was. The next point the trial court relied upon was testamentary exception. This was done sua sponte by Judge Robb. And the reasoning, according to if you read the transcript, is, well, Mr. Striegel's deceased. He was the accountant. Mr. Fleming is infirm and perhaps unable to testify. He was the attorney who drafted the will of the trust. And the clients are dead. Therefore, the court is a truth-seeking forum, and because we're trying to get to the bottom of this, produced the documents. That was the second articulated reason by the trial court. And it was sua sponte. The appellees argued wavering the trial court. They didn't argue this. This was solely the trial court. And that having been said, it's whose testamentary exception? In a will contest, the theory behind not having an attorney-client privilege be applicable is that if the client was alive, he or she would want to testify to tell the court what his or her donative intent was with respect to the distribution of the estate and the assets. And here we have a situation. I don't know if it's the testamentary exception because the client's dead. That would not make any sense, frankly, Your Honors, because the privilege is held by the accountant. Or if it's a testamentary exception because the accountant's deceased. Or the lawyer who drafted the wills and the trust based on information obtained from the accountant through the confidential mutual common relationship was infirm and unable to testify. It wasn't clearly articulated by the trial court, nor have the appellees given this court any reason other than saying, well, it's in derogation of the common law, therefore it has to be strictly construed. Well, if that's the case, read the statute. The statute says the accountant who has acquired information in his or her capacity as an accountant is not required by any court to divulge that information, so long as it was obtained in confidence. And no one here is contending it was not obtained in a confidential manner, in a confidential relationship, in a relationship to what our Supreme Court in the grand jury case said is to be sedulously fostered, that the injury to the accountant-client relationship is worse than the benefit to be obtained from the discovery. Those are the four factors recognized for the application of a privilege. And no one says, we don't think anyone says, that there is no privilege here. The appellees who are seeking the production of documents, actually one group has the documents. You've got to wonder why they even filed a brief. What are they complaining about? They have the documents, but that having been said, the Krugers have a brief unfiled in this court. Mr. Turner's client, June Brunton, has a brief unfiled in this court. She goes beyond what the trial court ruled upon and comes up in a brief of appellee with four new reasons, none of which were articulated to the trial court, contending that the privilege doesn't apply because this wasn't public accounting. It was private accounting, and there's some difference between public and private accounting. Well, without explanation, without definition, without citation to any authority, the arguments are not started. It's waived or forfeited because it wasn't raised in the trial court. That having been said, private accounting, if such a thing exists, would be the accounting world equivalent, if you will, to being house counsel to an insurance company or being house counsel or general counsel to a corporation, like a lawyer. The private accountant would work for ABC Corporation. His or her client would be the corporation. They would tend to the financial matters of the corporation and not have outside clients. That's not what the Striegel Knobloch & Company LLC accounting firm is. They are public accountants. There is no difference here, and that's non-starter. Section 805, they say, of the Accounting Act somehow is a reason to support production of these documents. The problem with that is Judge Robb ruled on April 11, 2013, found Mr. Tibble in contempt on May 9, 2013, and Section 805 wasn't effective until four months later in August. It has no application. The third point Bronten raises is an administrative code. A rule in the Illinois Administrative Code with respect to licensure and discipline of accountants has no application here. The rule is inconsistent with the statute. Therefore, it does not apply. Another non-starter argument. The fourth point, one that we, I think, described in our brief, and I don't want to make an ad hominem argument, as illogical, is that the holder of the privilege is irrelevant. Well, if the person who holds the privilege, if that's an irrelevant position, then there is no privilege. Because that would mean in an attorney-client relationship where the client holds the privilege, the attorney could waive it. And waive it without repercussion. In an accountant-client situation where the accountant holds the privilege, the client could waive it. And that's not the case. The accountant has the privilege. And what do the employees argue? Well, they argue, look at the laws of the other states.  Well, our General Assembly, in its wisdom, gave that privilege to the accountants. And if they want to make that argument, I was told two years ago when I argued Standard Mutual v. Jones in front of this court, arguing about Section 154 of the Insurance Code and how unfair it was, that I should go across the street and argue to the General Assembly. Well, they should as well with respect to the accountant statute. It's the law of Illinois. That having been said, you can probably count on one hand. The decisions of an Illinois court of review with respect to the accountant-client statute. You can probably add a couple of cases from federal district courts, but typically Illinois intermediate reviewing courts don't really care what federal trial judges say about the statute. That having been said, we do know that the Eighth Circuit, sitting in, where were the Eighth Circuits? I think it's St. Louis, in the PepsiCo case, looked at this statute, one of the few courts of review to look at the statute, and they said, well, it doesn't apply to all accounting actions. What it applies to, it will not apply to non-financial transactions. There was audit information on a plant at PepsiCo. Well, okay, so it doesn't apply to non-financial matters. Estate planning is a financial matter. So the Eighth Circuit, whatever their wisdom is on their view of this Illinois statute, has no application in this case. A panel of this court about 15 years ago in Hitt v. Stevens recognized in an attorney malpractice context that estate planning is, I think the language was, extremely personal and private endeavor, which often involves considerations which one would prefer never to reveal. That's the essence of the confidence that a client gives to the accountant when the accountant is doing the financial review and estate planning for people looking for estate planning work. That's the essence of this case. That is the nature of the documents. But Brunton says, somewhere in her brief she writes, we've waited 771 days for these documents. She's great with numbers on how long it takes from the time a notice is issued to a noncompliance date, but that the Striegel firm acted with dispatch in responding to the subpoena from the executor's attorneys. Well, that's irrelevant. And it's interesting to note that Judge Robb, in her ruling, although erroneous, said there was a waiver because the documents were produced. She didn't say there was a waiver because the documents were produced pursuant to subpoena. The manner or method of production was irrelevant to the trial court. She merely said they were produced, therefore there's express waiver. There's an uncontroverted affidavit from a partner of the accounting firm that described the relationship. It's in the sealed aspect of this record, Volume 7. The court probably wondered when a 1900-page record was delivered to Chambers, how long was that trial? Only to find out we're here on a discovery issue involving a seldom litigated concept, the accountant-client privilege in this state. The burden to establish an exception to this statute is on the appellees. We submit to the court that the appellees have not sustained that burden. Not at all. The brief filed by Brunton is four arguments that were never made to the trial court. They have little or no support or authority in that regard. And merely parrot the trial court's finding of waiver and the testamentary exception. Basically saying, we need the information, it's the only way to get it, therefore we're entitled to it. And yet, one of the few courts that looked at this statute, the First District and FMC versus Liberty Mutual, said that a court should not carve out exemptions from the otherwise straightforward language of the statute. The statute doesn't speak to exceptions or exemptions. Our Supreme Court, in the In Re. 1985 grand jury case, recognized one exception, and that was for tax returns. Tax returns were not subject to the accountant-client privilege. The court went through the test and it held that element number one, information obtained in confidence from the client did not apply to a tax return. Debits and credits that go to filling out the IRS forms are not privileged. Okay. There's no argument with that. That having been said, that is the only recognized exemption or exception by our Supreme Court. However, that doesn't apply to a state plan, which is a completely different animal. That is the It v. Stevens concept. Testamentary exception argument, that was the trial court. And a panel of this court, 30 years ago, in Snyder v. Poplar, looked at a clergyman exemption, a clergyman privilege, where Reverend Meeker visited some 89-year-old woman in the Mennonite Hospital in central Illinois. She was not a member of his church, but he would make pastoral calls to patients in the hospital. And during the course, he got to know this woman. And when she passed away, there was a will contest. And he was called to testify. The trial court held he could testify to what he observed, her demeanor. But he could not testify because of the clergyman privilege, which he asserted, as to what she may have told him with respect to what she intended to do with her assets. Because that fell within the clergyman privilege. And yet, the woman was dead. But no lawyer in that case, and no member of the panel that decided that appeal in 1981, said, well, there has to be a testamentary exception to the clergyman privilege. Because the person speaking to the clergyman on a pastoral basis was deceased. Therefore, he should be allowed to testify to what he was told during the pastoral visits with respect to what this woman intended to do with her assets. Because he was the only one who could do that beyond the lawyers who wrote the will. Bear in mind, one of the arguments that was made below and we make in our briefs is that when it comes to donative intent in a will contest, that's if it's not made by the lawyer because of the testamentary exception to the attorney-client privilege. It's found in the language of the testamentary documents, the will of the trust. It's not found in the files of an accountant who did estate planning, tax, and financial work for the client. For all those reasons, your honors, at minimum, I would ask this court to reverse the contempt finding as to my partner, Matt Tibble. And I would also ask the court to reverse the judgment of the circuit court with respect to the order to produce these documents, 1,000 pages, as well as the deposition of Pamela Wismiller, who was an employee of the Striegel Knobloch & Company LLC accounting firm. There's an old maxim in the law that you can't do indirectly what you can't do directly. Ms. Wismiller is not a CPA, but she is an employee of the CPA firm which holds this privilege. And if CPAs or any professional who has a privilege is to perform work in a manner where they have to keep confidential information from their staff, then you're going to have senior partners in the accounting firm, these gentlemen here, doing their own typing and filing because nobody else can see the work. Or they can't be called on to testify, but a clerical or non-CPA employee of the firm can. That makes no sense. That's doing indirectly what you can't do directly. So for all those reasons, I would ask this court to reverse. And I would ask for a few minutes for rebuttal. Questions? Thank you. You may proceed. May it please the court and counsel, my name is Mercer Turner. I'm counsel for June Brunton, the petitioner in this case. And my client did not ask for a contempt finding and of course believes that there shouldn't be any punitive action taken by the court relative to this. Truly it's a way to bring this issue to the 4th District for review. There are some disagreements that exist and the explanation that you've just heard I'd like to go over very briefly. We have, by the way, the employees in this case have agreed on a division of time and we are supposed to be getting a signal here sometime here to the argument. My time has expired. If you have questions, please bring them forward if you have some interest. I'd like to start with a little bit of a background. There were two lawyers involved in this, both represented by counsel very responsibly, both trying to protect the interests of the clients as opposed to the lawyers and doing so in a very professional way and sought protective orders, etc. And that all worked well at the trial level and they, in good faith, produced files and documents which revealed the role of the CPA in this case, which was in a capacity other than certifying financial statements, rather in some sort of a quasi-legal advisory capacity, assisting primarily with the alleged development of testamentary intent where over a course of a period between April and December of 2005, testamentary intent shifted dramatically from a pre-existing valid will and throughout that period to favor the executor and his wife. And we know of the role of that based on the discovery and it's mentioned in the briefing of the appellee of June Brunton. We know of the role of the CPA in this case in that effort and that's the reason why the discovery request was made by June Brunton. And, quite frankly, that information was, I believe, persuasive at the trial level in helping the trial court grade its decision in this case. I want to compliment the trial court. You know, an issue about an accountant privilege and discovery and probate court isn't something that happens every day. You just don't – the trial judge doesn't throw a switch and all of a sudden there's an expert in this stuff. The trial court here had to expend an extraordinary amount of time in order to make a decision in this case. And it's real clear with the effort that was undertaken there and the announcement made in open court. She prepared that decision much like a lawyer would prepare for an oral argument in front of you. You could tell how thoroughly she had worked in studying the case, studying the law, and coming to a decision. All of the arguments made by Brunton were raised at the lower level. Now, the descriptions used in the brief that Brunton created in trying to distinguish between public and private accountant has to do somewhat also with the concern about Section 8 and the amendment that occurred subsequent to that. The amendment was just kind of a definitional type amendment. Section 8 provided, as it existed at the time the lower court was making the decision, simply said being a CPA is doing certification of financial statements. That's basically all it said. The amendment says that all the other things, the advisory stuff that CPAs get into, that doesn't require a CPA license. And that has been the primary argument of the appellee, June Brunton, at the lower level as to why the privilege does not exist in this case. The Illinois Certified Public Accountant Act was created so that financial statements in the state of Illinois could be certified. That's its purpose. It doesn't have to do with business advisory activities or other activities that a CPA engages in with clients. The trial court, I believe it's fair to say, used, however, a test that's applied to all privileges and that there can be exception to any privilege if there is an overriding concern that has greater public meaning than the privilege itself. I believe that was the determination here. Not all citizens of Illinois have CPAs, but all citizens of Illinois have one thing in common and that is eventually there's going to be death. And the idea that our citizens can make provisions and wills and trusts for that period, when that comes, is an important public interest. And having those prepared without undue influence in a proper way overrides the existence of any privilege that might occur in this case. Whether something is confidential is not a bar to discovery. Most items subject to discovery are, in some fashion, confidential. And we believe that when considering all of the events that have occurred in this case, the overriding concern about the CPA's role and the testamentary intent of the clients about the production under a subpoena and the other examples presented an argument there wasn't a trial subpoena for discovery and there was in this case and it was complied with. So there was a clear cut waiver and there's no doubt that when the trial court made its announcement that it was referring to the production under that subpoena. Part of the difficulty in making the waiver argument is that it wasn't known until the executor filed a brief at the lower level that there had been that earlier production that had been kept secret. And so you have to get through about 300 pages of briefing before you ever figure out that that had actually occurred. But once June Brunton learned of that event, that was then presented as a basis to support a decision to order the production and to open up to the discovery of the information of the accounting firm. It's also clear in the record that the request to depose Ms. Wissmiller was done very respectfully. It wasn't as a way to circumvent any privilege. It was a way to enhance the memory of CPAs that might have the privilege. Bloomington is a small enough town that it would be common knowledge that she's a very bright individual and her memory is very good and the fact that she has a good memory might help the memory of the accountants who might be deposed in this case. You can even see in the record there's a suggestion that her deposition would be scheduled second and if the information was secured in the deposition of the CPA then her deposition would be canceled. Also it's clear in the record that there really wasn't any substantive information being sought from her but rather information about timing and scheduling, etc. We know from the production that we've received from the attorneys, for example, that there was a critical meeting in the accounting office in July of 2005 that had to do with the corporate affairs of a very substantial farm corporation existing in this case and that that meeting then transitioned into an estate planning meeting. We'd like to know who was in attendance there and if the executor was in attendance at that meeting in a discussion about the substantive matters pertaining to estate planning then that would be probative of the issue of undue influence. We also know from the information provided by the attorneys that there was a shareholder's agreement that had been prepared and an integral part of the estate planning and there were comments in letters produced from the lawyers about the willingness of the children to sign that with no comment made about the executor's willingness. It was easily implied in that letter that the executor had approved that shareholder's agreement and if the executor had a role in that we'd like to know what it is because the substantive terms of that agreement didn't arise from the law offices that arose out of the accounting firm. And there's no indication that any lawyer involved in this had any communication with the children about what was provided in the shareholder's agreement that was prepared. So you can see there is a valid basis here to extend discovery into the accounting firm. It is also pertinent, I believe, that the executor has consented to this discovery on behalf of the estate as a representative of the two decedents. Now the concern about the application of Section 8 of the Accounting Act was raised in the reply brief and I have a copy of the case and I'll leave it with a timekeeper here. But it's a Supreme Court case that talks about what happens when there's a change in statute, why there's a matter on appeal, and how the courts of review should consider the change and I believe it's fair to say that you can consider that change as a part of your decision. I don't believe that change controls the outcome in any fashion. It just simply was kind of an explanation, further explanation, clarifying the difference between what June Brunton described in her brief as public accounting, meaning participating in the operation of the certification of financial statements, and private accounting, which is advisory activities, business advice with a client of the accounting firm. It has no distinction between in-house and outside work or between government and private individuals. The distinction was that public accountancy is clearly the certification of statements and anything else would fall into the private accounting venue. I'd be pleased to answer any questions that you have and indicate that there's a very solid, well-reasoned lower court decision in this case that should be affirmed. Thank you. May it please the court, counsel, your honors, good afternoon. I am Darrell Dyes and I represent the executor with respect to the estate of Helen and Gordon Kruger, specifically related to the will and trust contest which was filed by the plaintiff, June Brunton. The reason they're essentially what this case is about, it's about discovery, it's about seeking the truth of what has happened, and it's about full disclosure. The executor issued a subpoena to Striegel, the accounting firm. That subpoena was responded to. Brunton issued a subpoena to the accounting firm and that subpoena was not responded to. We joined this appeal essentially because Brunton's subpoena was not responded to and we believe in order to try to move forward, the accountants are hiding behind an accountant-client privilege and we believe in full disclosure. We believe that the trial court was correct. We believe that this case should be a situation where the accountants should have to comply with Brunton's subpoena, primarily based on both waiver, which has been discussed by the appellants, and also based upon a good faith, what we believe should be a good faith, testamentary exception to the accounting-client privilege, similar to what we have with the attorney-client privilege. What would be the difference between the disclosure that has been made to you and the disclosure that Ms. Brunton seeks? I'm not in a position to answer that, Your Honor, because I don't know what documents would be produced to Brunton. Why would they be different? I don't know what they would be. Why is the discovery request different? Well, I think one of the underlying issues, I think the discovery request is identical, but I think one of the underlying issues is our subpoena was for documents and just documents. We also have, obviously, other discovery devices that might be used in the future, which, although that is not an issue in this appeal, Mr. Turner certainly has referenced the deposition issue, and that, I believe, is something, although it's not a part of this, I think that's kind of tied to it. The lower court did not specifically address that in the opinion, and that was not specifically briefed. But given that we are interested in seeking... But you have the documents, and Mr. Turner doesn't. That's correct. We have documents that were tendered to us in response to our subpoena. And are they subject to a protective order? I believe some of them are, yes. I would have to go back and look at the record. I'm not prepared to give an answer on that at this time. But we are interested in seeking the truth of what has happened in this particular case. We'd like to know what involvement the accountants had with the cruders. And so we have taken the position, we have taken that a waiver should apply, or any alternative that there should be an exception to the privilege. And the court knows there's a long-standing history in Illinois case law with respect to trying to honor and uphold and determine a testator's intent. And that's what this case is about. And the accountants should, we should have at least some type of a limited exception to the accountant-client privilege for will and trust contests, so that we can determine what involvement the accountants had in this case. Of course, the testator chose to either deal with an accountant or a lawyer and chose that vehicle or that means by which to make this plan, which means they chose to enter into a confidential relationship with an account in this instance. And likewise, they chose the same relationship with an attorney, but the attorney-client privilege allows for a testamentary exception. But it can't be exercised here because of Mr. Fleming's condition? Well, actually in this particular case, I believe that the appellant was incorrect in his facts. Tom Barger is actually the attorney that drafted the… Senior Tom Barger. I don't know, it's Tom Barger III. And I believe he's the one that drafted the documents and he is still, I believe, practicing. Mr. Fleming, I don't believe, drafted the particular documents that are issued. Have you shared the documents that were produced to you with Mr. Turner? We have not. Why not? We have… You support his position. We only support his position for the purpose of trying to find out, you know, what happened with respect to the accountant's relationship with the crews. That's our limited… Otherwise, we've joined this appeal. We're not on the same side as Mr. Turner. You think you're going to have a different result, but on this issue, you're on the same side. On this limited issue, we're on the same side, yes. My time is up. Thank you, Your Honor. Thank you. Rebuttal. Full disclosure. He has the documents he wants. It came from them. If they really believe their argument, there's no privilege because it's been weighed, so we should produce it. That's full disclosure. I submit to the court, they don't believe their own position. Full… Privilege is the antithesis of full disclosure. Every court that looked at privilege says privilege prevents disclosure. That's why we have it. If the court wants to get rid of privilege, then affirm. But I don't think this court does. The legislature gave the accountant a privilege. The… If it's not subject to a protective order, Justice Bolt, then there is no impediment for the attorney, for the executors, to produce the documents to anyone in the world because the trial court held there's no privilege. Or there's an exception to the privilege. And I don't think anyone in this case is seriously contending that the accountant-client privilege does not apply to the relationship between Gordon and Helen Kruger during their lifetimes with the Striegel, Knobloch, and Company LLC accountants. That would be ridiculous. Of course it exists. And what we are… We are not asking this court to rule in our favor and find that the accountant-client privilege is a complete bar to any production to anyone in the world, much like Justice Mills wrote for this court in Snyder v. Poplett, 98 LF 3364. Quote, This court does not believe that all communications made to clergymen are necessarily protected from disclosure under the Illinois statute, and we do not so hold. Probably one of Justice Mills' longest sentences because he wrote short sentences. Then it goes on, but the reasonable scope… Only the first paragraph. Usual, right. The reasonable scope of the statute does protect communications that originate in a confidence. Well, of course, everything the Striegel, Knobloch, and Company LLC accountants had originated in confidence with the intent to remain confidential. The discussion by Counsel for Brunton with respect to the Wissmuller deposition, contrary to page 19 of his brief where he wrote, Quote, She, quote, knows where all of the figurative bodies are buried. Well, that's a lot more than just the discussion generally of what the accountants did in that firm with respect to the Krugers. That is the essence of doing indirectly what you cannot do directly. It is one thing, certainly when a ruling is in your favor, the trial judge is smart. When an appellate court rules in your favor, the justices are brilliant. The fact remains that no matter how much time the trial court spent on this and how well she articulated the ruling… By the way, she is the one that ruled, testamentary exception, because Mr. Striegel is deceased and Mr. Fleming is infirm. What his role was, I don't exactly know. I was parodying what the trial court ruled. And it's a truth-seeking forum, and that's what we want. So like these gentlemen said, you've got to produce it because that's what discovery is all about. Well, the fact remains there's a privilege. There's a privilege recognized by statute. There is one judicial exception to that privilege recognized in Illinois, and that is for tax returns. Statute admits of no other exception. They have not articulated another exception. Waiver does not apply. And in derogation of the common law, you have to look at the statute and apply its plain and ordinary words in a clear and unambiguous manner. That statutory construction, this court well knows that, and when that's done, the ruling of the trial court was wrong. And we'd ask this court to reverse. All right. This has been a winding road for me, so I want to clarify something again. One partner of the firm discloses to one side, but another partner of the firm doesn't disclose to another side. That's more of a statement of justice than an act, yes. Well, then, and I understand that it's more than the documents. It's also the discovery debts. But how does that square if the firm itself provides the documents, but only to one side? What public policy is served or what financial aspect is served by the partners not knowing what the other one's doing or not agreeing on it? Well, there was a subpoena by the executor's attorneys to the firm, to the accounting firm, and one of the partners in the accounting firm produced the documents. There was a subsequent subpoena to the accounting firm, which then led to counsel being engaged, my partner, Mr. Tibble. He moved to quash the subpoena, and the motion was granted in November of 2012 by Judge Robb, except for tax returns. And then through some subsequent motions and more subpoenas, the issue went back before Judge Robb, and then in April of last year, she ruled that because of the production by the one partner to the attorneys for the executors. May I answer your question? Yes, please. The privilege had been waived, therefore she changed her mind five months later. Everyone's, you know, she's human. People change their minds. And said, you have to produce the documents. The response by the attorney for the accounting firm, non-party subpoena witness was, let me discuss my options with my client. And she set a status hearing. He attends the status hearing, and he indicates he would not produce the documents. That was in May of last year. And as a means, and I think the court recognized that if you read the transcript, that that was coming. Because that's the only way you can get a ruling like that before a court like this. So yes, those documents were produced. Bear in mind, the accounting firm also has a privilege. And the Western Partners case, which we cite in our brief that the court wants to bother reading, Judge Bua's decision from 1979 in the Northern District of Illinois, said the accounting firm has a privilege. And as long as the accounting firm has those documents, they don't have to produce them. That was his take on Illinois law. We know how federal trial judges rule. They rule based on how they think the Supreme Court would rule. For those reasons, we again ask the court to reverse. Thank you. Thank you. Stay in recess until the readiness of the next case.